ALEXANDER ROBERTSON, et al. plaintiffs in error, vs. GEORGE H. JOHNSTON, Trustee, et al. defendants in error.

J. R. died in 1803, leaving a considerable estate. By the 4th item of his will, he declares as follows : "After the foregoing dispositions, I give and bequeath my whole estate, real and personal of what description soever, in manner and form following: To my beloved wife Jane Nesbit, the sole direction of the whole, with the guardianship of my several children by her, until they arrive at the age of twenty-one years, respectively, when each of my children shall receive a share or dividend of my estate, in just proportions by appraisement of my executor, &c., reserving one-third of my estate to the exclusive use of my beloved wife during her life, and at her demise, the said third part to revert to my children, or the survivors, share and share alike, &c. And the 5th item of the will is as follows: Should it be the divine pleasure of Almighty GOD, to take from this life my dear wife, and all my children, before they arrive at maturity, or in case of their all dying single or childless, then in that case, *what may remain* of my said estate, shall go to my brothers, William, Andrew, Alexander and David, and their heirs, in four equal proportions, &c." *Held*, That under the words of the will, the daughters took a fee, defeasible upon the events of either dying before arriving at womanhood or puberty, or single, or without children; and that an absolute power of disposition could not be implied from the words, "*what may remain*," so as to vest an absolute fee in the children, and that the limitation over to the brothers of the testator was good by way of executory devise.—LUMPKIN, J.

A testator, after bequeathing his "whole estate" to his wife and daughters in certain proportions, added, "should it be the divine pleasure of Almighty

Robertson et al. vs. Johnston trustee, et al.

*God to take from this life my dear wife, and all my children, before they arrive at maturity, or in case of their dying single or childless, then and in that case, what may remain of my said estate, shall go to my brothers."*

1.] *Held,* First, that the expression, "what may remain of my estate," was not to be so read, as to make it confer on the daughters, the absolute power of doing with the "estate" whatever they pleased; but was to be so read, as to make it confer on them, only a power corresponding to the interest which they took; or so read as merely to make it designate an estate in remainder, and, therefore, as not directly conferring any power at all.—BENNING, J.

2.] *Held,* Secondly, that the word, "maturity," was to be taken by its sense, of *puberty,* and, therefore, that there was no sufficient reason for changing the word, "or," into the word *and.*—BENNING, J.

In equity, from Chatham Superior Superior Court. Decision on demurrer by Judge FLEMING, at chambers, August 4th, 1857.

This case was heard upon a transcript of the record, and the following bill of exceptions, which contains all the facts necessary to a full understanding of the decision of this Court.

GEORGIA, CHATHAM COUNTY.

Alexander Robertson, *et al.* complainants, and George H. Johnston, *et al.* defendants. } In Equity, from Chatham Superior Court, May Term, 1857.

Be it remembered that at the May Term of Chatham Superior Court, in the year of our Lord eighteen hundred and fifty-seven, Alexander Robertson and others, complainants, filed their bill on the Equity side of said Court against George H. Johnston, trustee, and Allen R. Wright and others, by which the said complainants averred that James Robertson, late of the city of Savannah, departed this life in the year eighteen hundred and three, leaving a considerable estate, having first made his last will, by the 4th item of which he declared as follows: "After the foregoing dispositions I give and bequeath my whole estate, real and personal of what description soever, in manner and form following: to my be-

Robertson et al. vs. Johnston trustee, et al.

loved wife, Jane Nesbit, the sole direction of the whole with the guardianship of my several children by her, until they arrive at the age of twenty-one years successively, when each of my children shall receive a share or dividend of my estate in just proportions by appraisement of my executors, &c., reserving one third part of my estate to the exclusive use of my beloved wife during her life, and at her demise, the said third part to revert to my children or the survivors share and share alike, &c.

And in the 5th item of the will as follows: " Should it be the divine pleasure of Almighty GOD to take from this life my dear wife, and all my children before they arrive at maturity, or in case of their all dying single or childless, then in that case, what may remain of my said estate, shall go to my brothers William, Andrew, Alexander and David, and their heirs in four equal proportions." That the said will was duly proved, and that the testator left him surviving his said wife and four children Bellamy, Ann, Sarah and Jane Robertson, all daughters and infants. That the executors named in said will did not qualify, but the whole remained in possession of the widow for the common use until her death, in the year 1823. That after her death, the children of the testator continued to live together and made no division of the estate although they had attained the age of twenty-one years. That Ann and Sarah died some years ago, single and childless, leaving their sisters Bellamy and Jane surviving, and in the possession of the entire estate. That subsequently Bellamy intermarried with one Archibald Campbell, who soon after died, leaving no children, and that subsequently the said Bellamy died childless, leaving her sister Jane surviving and in possession of the entire estate of said testator.

That the said Jane, the then only surviving child of said testator, in the year 1850 intermarried with one Allen R. Wright, and being in possession of the estate, made previously to her marriage a settlement by which she conveyed all the estate of the said testator to trustees for certain uses

Robertson et al. vs. Johnston trustee, et al.

during her life, and at her death to the child or children of the said Allen R. Wright by a former marriage. That in the year 1856, the said Jane, the last of the children of the said testator, departed this life intestate and childless, never having had any child. That George H. Johnston, one of the defendants was duly appointed trustee of said marriage settlement, and has taken into possession all the estate of said testator, which is specially set out in the bill.

That the complainants are the children and heirs at law of William Robertson, brother of testator, and as such entitled under the will, to the estate. That by the will of testator, in the event and upon the contingency which has happened, to wit: the death of the said Ann A. and Sarah Robertson, single and childless, and the death of the said Bellamy and Jane N. childless and without issue, the whole estate of the said testator upon the death of his last child childless and without issue, vested absolutely in the said complainants as heirs at law of William Robertson the brother of said testator, and in the children of David another brother, (if there be any.) That the said defendants might be compelled to discover and account, &c. All which matters and things will fully appear by reference to the said bill of record, and to the said will attached thereto as an exhibit. And be it also remembered, that afterwards, that on the 23d day of May, in the year aforesaid, at the term of Chatham Superior Court, the said defendants, by their Solicitors, filed a general demurrer to said bill for want of equity, and by agreement of counsel for complainants and defendants, the said demurrer was set down for argument at vacation in chambers, and was accordingly duly argued, and that his Honor Judge FLEMING, afterwards on the 4th day of August last, filed his written decision upon the said argument, by which the said demurrer was sustained, and the bill dismissed with costs. And now come the complainants, by their Solicitors of record, within thirty days of the day on which the said decision was filed, and present this their bill of exceptions, complaining of

said decision, and allege that the said decision and judgments by which the said demurrer was sustained and the bill dismissed are erroneous. That the said bill contains matter properly cognizable in a Court of Equity, and which requires an answer from the defendants.

That the Judge erred in his construction of the will of James Robertson, upon which construction he sustained the demurrer. That the Judge erred in deciding that upon the death of all the children of testator, without ever having had issue, the estate did not vest in those to whom it was devised by the 5th item of the will, and erred in his construction of said 5th item.

That the Judge erred in construing the said will so as to make the limitations effective only in the contingency that all the children of testator had died before arriving at the age of twenty-one, and single and childless.

Therefore, these complainants pray that this, their bill of exceptions may be signed and certified, and an order issued to the Clerk of the Superior Court of Chatham County, requiring him to make out a complete copy of the record of said case, and to certify the same, and cause it to be transmitted to the January term of the Supreme Court, at Savannah, that the errors alleged to have been committed may be considered and corrected.

LAW, BARTOW & LOVELL,
PETIGRU & KING,
*Solicitors for complainants.*

LAW, BARTOW & LOVELL; PETIGRU & KING, for plaintifls in error.

WARD, OWENS & JONES, for defendants in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Seldom has the same amount of legal learning and ability been exhibited in this Court, as in the argument of the case

at bar, and yet after all, it must be confessed, that the decision must depend mainly, if not entirely, upon the meaning of a single word, in the 5th item of the testator's will.

The following are the two items of the will of James Robertson, nephew of the great historian, under which the questions arise, made by the bill and demurrer.

"Fourthly: After the foregoing dispositions, I give and bequeath my whole estate, real and personal of what description soever, in manner and form following: To my beloved wife, Jane Nesbit, the sole direction of the whole, with the guardianship of my several children by her, until they arrive at the age of twenty-one years successively, when each of my said children shall receive a dividend or share of my estate, in just proportion, by appraisement of my executors, or the survivors of them, reserving one-third part of said estate, to the exclusive use of my said wife Jane Nesbit, during her life, and at her demise, the said third part to revert to my children, or the survivors, share and share alike; and in the event of the death of my wife, during the minority of the whole, or any of my children, I then request of my executors or the survivors of them, to undertake the guardianship of said minor or minors."

"Fifthly: Should it be the divine pleasure of Almighty God to take from this life my dear wife, Jane Nesbit, and all of my children before they arrive at maturity, or in case of their all dying single or childless, then and in that case, what may remain of my estate shall go to my brothers, William, Andrew, Alexander and David Robertson and their heirs, in four equal proportions."

The testator left surviving him, his wife and four children, Bellamy, Ann, Sarah and Jane Robertson, all daughters and infants. And the whole estate remained in possession of the widow, for the common use, until her death in 1823. After her death, the children continued to live together, making no division of the estate. Ann and Sarah died some years ago, single and childless, leaving Bellamy and Jane,

surviving, their sisters, and only heirs at law, and in possession of the entire estate. Bellamy Robertson intermarried with Archibald Campbell in 1840. Archibald Campbell died in 1844, leaving no child, but his widow surviving him, who as his sole heir at law, became entitled at his death again to her portion of the estate. Subsequently, in 1847, Bellamy died childless, leaving her sister Jane surviving, and in possession of the entire estate of their common father. In 1850, Jane intermarried with one Allen R. Wright, and being in possession of the estate, made previously to her marriage a settlement by which she conveyed all the estate of said testator to trustees for certain uses, during her life, and at her death, to the child or children of the said Allen R. Wright, by a former marriage. In 1856, Jane, the last of the daughters, died, never having had a child, and the question is, whether the children of William Robertson, a brother of James Robertson, the testator, or the children of Allen R. Wright by a former wife, and a progeny wholly foreign to his house and lineage, are entitled to the estate of James Robertson.

The construction we put upon the 4th and 5th items of the testator's will is this : By the 4th item the daughter's of the testator took an estate in fee, which vested immediately, but to be kept under the control of the mother as guardian, until each successively arrived at the age of twenty-one, when the share was to be given off. But the testator reflecting, that these daughters, who were infants, might die at an early age, or single, or if married, childless, qualifies the estate given by the 4th item, and provides that should either of these events happen, namely ; should all of his daughters die before *maturity*, that is, as we think, before becoming marriageable, or die single at any age, or if married, die childless, then the estate in remainder, should go over to his brothers. In other words, the daughters took a fee, subject to be divested, upon the happening of any one of the contingencies above specified. By the 4th item of the will, the testator is providing for his immediate family ; and looks no fur-

Robertson et al. vs. Johnston trustee, et al.

ther. By the 5th item, he extends his dispository scheme beyond the immediate family and looks to his blood in the collateral line, as the ultimate recipients of his bounty, and standing next to his children in his affection, should offspring from his own loins fail.

We have listened to an elaborate discussion, the object of which was to show, that " or," is to be construed " and," in the 5th item of the will; and that consequently, the testator by the words, *before maturity, or single, or childless*, intended that all the contingencies mentioned, should happen, before the estate granted could pass by way of an executory devise. And a mass of authority is cited in support of this proposition. And even our usually calm and tranquil-minded brother Fleming, waxes warm and earnest, when he comes to treat of this point. " By the 4th item," says he, " the estate vests absolutely in the children at twenty-one." By the 5th item, if they all die *before maturity*, or *single* or *childless*, the property is to go over. Now restrict the words single or childless, to death before maturity, and the two items are perfectly consistent. Why then not do it? why make the testator inconsistent with himself, when our duty is just the contrary? The answer if I have understood the argument of counsel is, because it would be doing violence to his language. That the testator having used the disjunctive " or" we may not make it " and." To this, I reply, that " or" becomes " and," when the context requires it, " or" becomes " and," when it is necessary to carry out the intentions of the testator. This rule of construction is not denied; on the contrary, it is admitted. Let us then apply it. If " or" is not construed as " and," then the property will go over, *if either one of the contingencies happen.* There is no escape from this conclusion. Indeed this is the position contended for by complainants counsel. Suppose then, all the children had died before maturity, one of the contingencies would have happened, and the property would go over, *although they did not die single, and although they*

Robertson et al. vs. Johnston trustee, et al.

*did not die childless.* Is there a Court in the world, that would not make *"or" "and,"* to avoid such a result? Does not the clear meaning and intention of the testator require it? Does any one doubt, can any one doubt, that the testator meant his property to go to his grand-children, rather than to his brother's, even if his children should die before maturity? But this clear intention, would be defeated, unless *"or"* be made *"and."* Now if *"or"* be made *"and,"* if the children die before maturity, leaving children, then it is, *"and,"* if they die single; and it is *"and"* if they die childless. *"Or"* cannot be *"and,"* as to one of the contingencies, and *"or,"* as to the others. What Court would hesitate to make *"or,"* *"and,"* if this were a contest between the grand children and the brothers?"

This quotation from the opinion of our learned brother, sets forth the defendants case in all its strength, and contains the substance of the reasoning of all the authorities upon this subject, as well as the ground upon which the rule was adopted. A rule of law beginning with the case in *Cro. Eliz.* 525, and coming down to the present time; and which declares, that a devise to one and in case of his death, under twenty-one, or, without issue, over, the word *"or"* is construed *"and,"* and the estate does not go over, unless both the specified events happen. The case in *Croke,* was a devise to A. and his heirs, and if A. died within the age of one and twenty years, or without issue, then over. The devisee died under twenty-one years of age, leaving issue a daughter. It was held that *or* must be construed *and,* otherwise the issue would be defeated; but as the testator intended a benefit to the issue through the parent, the intention would be carried out, and the issue protected, by changing the disjunctive into the copulative. This case we repeat, illustrates the origin and reason of the rule. (1. *Jarman on wills* 416.)

How plausible, and yet how fallacious the reasoning which would apply such a rule and the principle upon which it is founded, to the case before us!

If the same end can be attained, that is the preventing the immediate decendants of the testator from being cut off by an exposition which saves the necessity of changing the words of the will, and reading *or* for *and*, and requiring all three of the events mentioned in 5th item of the will, to concur, to arrest the estate from going over, and one too, which the context shows, would much better subserve the intention of the testator, is it not the duty of the Court to adopt it? And all this we accomplish by interpreting the word, *maturity*, in the 5th item of the will, to mean *puberty* instead of *legal majority*, or twenty-one years of age. Why not give it this meaning? If the testator intended the latter, why did he not employ the same terms used in the 4th item of his will, to convey that idea? The truth is apparent, that in the 5th item of his will he was contemplating the various changes which might attend his daughters in the future. He foresaw that they all might die, before being marriageable, in which case of course, there could be no issue; and. in *that event*, his will is, that his estate should go over to his brothers. And by this simple view, the whole fabric of the argumentation, raised with so much skill and labor on the other side, tumbles to the ground. He further saw, that notwithstanding his daughters might attain to maturity, they might not marry, either before or after arriving at the age of twenty-one years, or if married, that they might die childless, and in either of these events, his will and wish was, that his estate should go over to his brothers. By this construction, if there be descendants, their interest is protected; why then change and torture and twist the language of the will to effect an end, which is accomplished without it? why make a substitution of words for a purpose which does not exist? why enforce a rule, when the result is, instead of retaining the estate in the family of the testator, to carry it out of his kith and kin, and over to strangers? Would the testator, if in life, desire such a change? Would he prefer these strangers to his blood to have his estate, in preference to his brother's.

Robertson et al. vs. Johnston trustee, et al.

children? And in the glowing language of our brother FLEMING, " is there a Court in the world, that would make " or," " and," to produce such a result? Does not the clear meaning of the testator forbid it? Does any one doubt; can any one doubt, that the testator meant his property to go to his nephews and neices, rather than to the children of a son-in-law by a former wife, if his children should die before puberty, or single, or childless? But this clear intention would be defeated, if " or," be made " and."

And when it is eloquently asked, " what Court would hesitate to make " or," " and," if this were a contest between the grand-children and the brothers?" we reply, in the first place, that under our construction of the will, no such contest could ever arise, under any state of facts; and secondly, in return, we ask, what Court should not halt and hesitate long, to make " or" " and," in 'a contest between the brothers' children, and the children of Allen R. Wright, by a former wife, before intermarrying with the testator's daughter, with whom he wedded at an advanced period of his life, and with whom he lived six years only?

Why should this or any other Court apply a rule, which has been established to keep the estate in the family, to a case which would take it from them? It would be unreasonable to do so. However ready and willing we might be to administer the rule, provided *issue* were before the Court. We do not feel imperatively called on to execute it, where not only the actual facts as they exist, do not demand it, but where even the abstract principle is left intact, by our interpretation of the words of the will. And that is by expounding the word maturity in the 5th item of the will, to mean puberty, and not twenty-one years of age. And it is not disputed by counsel for the defendants in error, that it may mean *womanhood* and not *legal majority.* We are called on to decide in what sense did the testator use the word? Arrival at age instead of arrival at womanhood, may be the more ordinary legal acceptation of the term *maturity;* still

Robertson et al. vs. Johnston trustee, et al.

if the whole will or context shows that it was the intention
of the testator to use the term in the other sense, that mean-
ing must prevail.    And that such was the mind of the testa-
tor, we are well satisfied.

Again, it is contended, that an absolute power of aliena-
tion was vested by the testator in his children, by the lan-
guage of the 5th item of the will; "what may remain of my
estate shall go to my brothers," &c., and that consequently,
the daughters took an absolute fee in the estate, and that
neither a remainder nor an executory devise, could be limit-
ed over, upon such an estate; and 15 *Ga. R.* 457; *Ide vs.
Ide*, 5 *Mass. R.* 500, 504; 10 *Johns R.* 19; 16 *Johns R.*
537, 590; *and* 4 *Kent*, 270, are cited in support of this pro-
position.    And it is not denied, but that the words used may
admit of this construction.    They do not however, necessa-
rily require this construction and none other.    Certainly none
of the cases referred to are exactly parallel with this.    Take
for instance, the Massachusetts case of *Ide vs. Ide*, where the
testator undertakes to give over, what the son "might leave."
The phraseology is very different from giving over, " what
may remain."    The former must refer to the action of the
first taker; and by necessary implication perhaps, as was
said by Chief Justice Parsons, confers upon the son the pow-
er of disposition.    Whereas, in the case at bar, the words
" what may remain," may mean, and we are inclined to think
do mean, so much of the estate, as may survive its ordinary
use, wear and decay.    The testator merely intended to signi-
fy his wish, that his wife and children should use the proper-
ty freely without being impeachable for waste, &c.    (1 *Hill,
S. C. R.* 370, 371; 2 *Hill S. C. R.* 521.    This expression
looks rather to the partial consumption of the estate, than its
alienation.    The testator must be presumed to have foreseen
the possibility, that the whole estate might go over to the
remainder-men by the death of his wife and daughters, be-
fore the latter arrived to womanhood.    He did not, therefore
he could not have intended to, bestow upon his children the

Robertson et al. vs. Johnston trustee, et al.

unrestricted power of disposition, during their infancy.   Besides holding as we do, that the daughters took a fee, defeasible upon the event of their dying without children, and as that contingency could only be realized at their death, since in legal contemplation as long as they lived, they might have children; this construction negatives necessarily an intent on the part of the testator, to use the words, "what may remain," in the sense of a power of disposition: And if that power cannot be implied from those words, then the limitation over is good, by way of executory devise.

Neither counsel nor the Court below seem to have attached much importance to this point.

BENNING J., concurring.

The fifth item of the will is as follows: "After the foregoing disposition I give and bequeath my whole estate, real and personal of what description soever, in manner and form following: to my beloved wife, Jane Nesbit, the sole direction of the whole with the guardianship of my several children by her until they arrive at the age of twenty-one years successively, when each of my children shall receive a share or dividend of my estate, in just proportion by appraisement of my executors, &c., reserving one third part of my estate to the exclusive use of my beloved wife during her life, and at her demise, the said third part to revert to my children or the survivors share and share alike," &c.

Under this item, the daughters took, I think, the fee or absolute interest, in the whole property, less an estate in one-third of it, to the wife for her life.   I shall use the word fee, as including personalty, as well as realty.

The daughters all survived the mother, I believe, and, therefore, the word "survivors," cannot affect the conclusion, although it may be true, that that word, might in possible events, have affected it, so far as the third given to the wife is concerned.

I believe the Court is unanimous in the opinion, that this is what the daughters and the wife took, under the fourth item of the will.   The reasons for this opinion will, doubtless, be stated by another member of the Court.   It is, therefore, needless that they should be stated by me, I pass then, to the fifth item.

The fifth item is in these words : "Should it be the Divine Pleasure of Almighty God to take from this life my dear wife, and all my children before they arrive at maturity, or in case of their all dying single or childless, then in that case, what may remain of my said estate, shall go to my brothers, William, Andrew, Alexander and David, and their heirs in four equal proportions."

Did these words have any, and if so, what, effect, on the absolute fee given as aforesaid, to the daughters, in the fourth item ?

It is said, for the defendants in error, that these words had no effect at all, on that absolute fee; it is said, that by the expression, "what may remain of my estate," found in these words, a power was impliedly given to the daughters, to do with the property as they pleased, and, it is argued, that the gift of such a power, is, itself, a gift of the absolute fee.

Was such a power, or any power, impliedly given to the daughters, by that expression ?

The expression is susceptible of three readings : 1st, a reading, making it give to the daughters, absolute power over the property ;—2dly, a reading, making it give to them limited power over the property ; viz : a power limited by the interest which they took in the property; 3dly, a reading, giving to them no power at all, but merely designating an estate in remainder.

To say that the first is the true reading, is, according to the defendant's counsel themselves, to make the limitation over, void—the limitation to the brothers.

But it is a rule, that any reading that would make void, a part of an instrument, is to be rejected, if possible.

Robertson et al. vs. Johnston, trustee, et al..

That the expression is quite as susceptible of the second reading, or even of the third, as it is of the first, seems to me clear. "What may remain of my estate," may as well mean, what may remain after the daughters have done with it, only whatever the degree of interest they have in it, may authorize them to do with it, as it may mean, what may remain, if anything, after they have done with it, whatever they please.

So, "what may remain of my estate" may, as it seems to me, be as well as any way, taken to be synonymous with "*the remainder* of my estate."

Suppose the testator had first used the following language : "I give all my land and negroes to my four daughters in fee, less an estate in one third of the same to my wife, for her life, and if they should die under maturity, or single, or childless ;" and then had added any one of these three forms of expression—; "then, I give the *land and negroes* to my four brothers ;" "then, I give *what may remain*, of the land and negroes to my four brothers ;" "then, I give *the remainder* of the land and negroes to my four brothers," would he not have conveyed the same meaning? And so far as the negroes are concerned, would not this meaning be more accurately conveyed, by the expression, what may remain, than by either of the others ? The negroes might, some, or even all, be dead. All the testator *could* give, would be what *might remain* of the thing given, at the end of the first gift.

[1.] I think, then, that the first of the three readings, is not the one to be taken.

I remark too, that I do not see clearly the *principle* which justifies the position, that the grant of a general power to dispose of property, is equivalent to a gift in fee of the property. A power is not a conveyance. And, feeling this to be a difficulty, I am the more disposed to insist, that at least the existence of such a power, ought, in every case to be, established by express words, or, by *necessary* implication.

Robertson et al. vs. Johnston, trustee, et al.

It not being true, then, as I think, that the expression, "what may remain of my estate," is to be construed as conferring on the daughters an absolute power over the property, the question recurs, what effect, if any, did the words of the fifth item, have on the absolute fee created, in the daughters, by the fourth item?

And the answer must be, (if I am right as to the expression "what may remain of my estate,") that those words reduced that fee from an absolute, to a conditional fee; that is to a fee subject to be divested, on the happening of some event, or events. I suppose this will not be denied.

The only question, then, will be as to the event or events, on which, the divesting was to take place.

The words of the item are, "should it be the Divine pleasure of Almighty God, to take from this life, my dear wife, and all my children, before they arrive at maturity, or in case of their all dying single, or childless, then in that case, what may remain of my estate shall go to my brothers," &c.

Does this mean that the estate was to go to the brothers on the happening of any *one* of the three events, or, only on the happening of *all* or the three events?

If the word "or," is to be read, or, the meaning is, that the estate was to go to the brothers on the happening of any *one* of the three events; and therefore, that it was to go to them on the daughters all dying childless.

Why should, "or," not be read or? Or, is the word used. In the context nothing is to be found requiring it not to be so read. Is the liberty given, to hunt for intention outside of the words used, when these are plain? At least, such a liberty should not be exercised, except as a last resort.

It is however argued that if we read " or," or, we do that which would in a *possible* case defeat the testator's intention; viz: the possible case of any or all of the daughters dying " under maturity," but yet not dying " childless;" it being assumed that it could not have been the testator's intention, that his property should go to his brothers, whilst there was

Robertson et al. vs. Johnston, trustee, et al.

a grand-child of his alive; and, then, it is further argued, that if we read " or," and, we do that which will make it impossible for the estate to go over to the brothers, until all of the three events have happened, and, therefore, that which will make it impossible for the estate to go over to them, if any of the daughters leave a child, whether they die over, or under, " maturity." Thence it is insisted, that we ought to read " or," and. This is the argument; and in support of it, are read cases in which, when property was willed to one person, and if he should die under twenty-one years old, or without a child, then over to another person, it was held that " or" was to be read, and. Most of these cases are stated in Jarman on Wills. 1 *Jar. Wills*, 443.

But to the validity of this argument two things have to be assumed, of which the first is, that the word "maturity," has to be rendered by its meaning, of twenty-one years old, rather than by its meaning, of puberty; for dying under puberty is of necessity dying " childless;" therefore, if the daughters had died under puberty they would have had to die " childless;" therefore if they had died under puberty the case of their dying leaving a child would have been *im*possible. Yet the word, " maturity," having both meanings, may as well be rendered, puberty, as it may, twenty-one years old.

The second is, that if the taking of a man's words as they are, would in any *possible* case defeat his intention, we are not to take them as they are but to change them into others, although, in the *actual* case, the taking of them as they are, would not defeat his intention.

Any of the daughters might have died under twenty-one years old, and yet not have died " childless." If any of them had so died, and her child were the party prosecuting a suit of this sort, we should have the *possible* case meant. The party suing, is not a child of any of them; none of them ever had a child. This, is the *actual* case.

Now, admit that reading " or," or, would in the possible case, make the testator's property go to his brothers, rather

Robertson et al. vs. Johnston, trustee, et al.

than to his own daughter's child, and that this would defeat 'his intention, yet, are we, thence, at liberty to conclude, that reading " or," or, would in the actual case defeat his intention? In the actual case, there is no daughter's child, but only brothers. And what is there, to justify us in assuming, that, although, the testator intended to give his property to his brothers, on his daughters all dying childless, if they died under twenty-one, he, yet, did not intend to do so, on his daughters all dying childless, if they died over twenty-one? Nothing that I can see. On the contrary, is there not enough, to justify us in assuming, that he as much intended to give his property to his brothers in the latter of these two cases, as he did, in the former of the two? I rather think so. There is the word " childless" without restriction; there is the natural bias to one's own issue.

Assume it then to be true, that the testator's intention was, to give his property to his brothers, if his daughters died childless, whether they were under, or over, twenty-one, when they so died. They all did die childless. This is the actual case. Taking " or," as or, would in this, the *actual* case, make the property go to the brothers. That would fulfil the testator's intention. Changing " or," into and, would make the property go to others. That would defeat his intention.

Now are we permitted, to sacrifice the testator's intention in this, the actual case, out of regard to fulfilling his intention in the possible case? The rule allowing, or, to be changed into, and, was made *merely* that intention might be fulfilled. Does it not follow, then, that the rule ought to be applied in those cases in which, it will fulfill intention, and ought not to be applied in those in which, it will defeat intention? Does it not follow, that the application of the rule should be reserved until the coming of the possible case to which, I have referred? See *Wild's Case*, 6. *Co.* Otherwise, this must follow, that whether the rule will, upon the whole, do more to fulfill, than to defeat, intention, will depend on, whether the cases of donees dying childless under

Robertson et al. vs. Johnston, trustee, et al.

twenty-one, are more numerous than the cases of donees dying childless over twenty-one. I incline to think the latter will be found to be the more numerous. Should that be so, then the rule if applied to the latter cases, as well as to the former, would work its own defeat.

I am not prepared to admit then, that this second assumption made by the argument which I am noticing, is any more allowable, than the first was. There are certainly dicta, perhaps decisions, to the effect, that instruments are to be construed in reference to possible cases. This means, I suppose, that if in a possible class of cases, however small, a particular construction would defeat intention, that construction is not to be adopted, although in the actual class of cases, however large, it would fulfil intention, but that another construction is to be adopted, even one which, though it may in the small possible class fulfill intention will in the large actual class defeat intention. I am not prepared to give my assent to any thing susceptible of such a meaning as this.

There is nothing then in the argument under consideration that requires us to read " or," and.

The object to be accomplished by doing that, may be as well accomplished, by reading it as it is, or; and by taking the word, " maturity," by its meaning of puberty. Changing " or" into, and,—nay *two* ors, into *two* ands, would be a " strong measure;" far stronger than taking " maturity," by its meaning, of puberty. Of the two measures then, the latter, I think, is the one to be chosen.

If I am right in these conclusions, and I think I am, the fifth item of the will means, that the estate was to go to the brothers on the happening of any *one* of the three events. All the daughters died childless. Thus one of the three events happened.

William Robertson, one of the brothers, is dead. The complainants are his heirs. A fourth of the estate, therefore, vests in them, and the suit is brought for that fourth. No question is made, as to whether the suit ought not to have

Robertson et al. vs. Johnston, trustee, et al.

been brought by his administrator, rather than by his heirs.

In my opinion then, there was equity in the bill, and con-sequently, error in the Court, in sustaining the demurrer.

McDONALD, J. dissenting.

James Robertson, of the city of Savannah, in the year eighteen hundred and two, made and published his will and testament, the fourth and fifth clauses of which are as follows; viz : "4th. After the foregoing dispositions, I give and bequeath my whole estate, real and personal, of what description soever, in manner and form following :   To my beloved wife, Jane Nesbit, the sole direction of the whole, with the guardianship of my several children by her, until they arrive at twenty-one years of age, successively, when each of my said children shall receive a dividend or share of my estate, in just proportions, by appraisement of my executors or the survivors of them, reserving one-third part of said estate, to the exclusive use of my beloved wife, Jane Nesbit, during her life, and at her demise, the said third part to revert to my children or the survivors, share and share alike; and in the event of the death of my wife during the minority of the whole or any of my children, I then request of my executors, or the survivor of them, to undertake the guardianship of such minor or minors."   " 5th.  Should it be the Divine pleasure of Almighty GOD to take from this life my dear wife, Jane Nesbit, and all my children before they arrive at maturity, or in case of their all dying single or childless, then and in that case, what may remain of my estate shall go to my brothers, William, Andrew, Alexander, and David Robertson, and their heirs, in four equal proportions."

The testator left four children, all daughters.   They all attained the age of twenty-one years.   Two of them died single and childless, leaving the other two sisters surviving them. One of the surviving sisters married, and having survived her husband, died childless, leaving the other sister surviving

her. The last surviving sister, on the twelfth day of March, eighteen hundred and fifty, intermarried with Allen R. Wright, of the city of Savannah. Prior to the marriage, she executed a marriage settlement, conveying all the estate and property to Edward W. Solomons, to certain uses and upon certain trusts, for and during her life, and after her death to her own children or child, and the children of the said Wright by a former marriage. By the decree of the Court of Chancery, on the application of the said Solomons, he was discharged from said trust, and George W. Johnston was substited in his stead.

The four brothers of the testator, named in the will as legatees in remainder, were all dead at the time of the filing of the bill; two of them never married, one of them went to Ireland and is said to have married there, and died, and is supposed to have left issue, but of which fact the complainants allege they have no knowledge. The complainants are the children of William Robertson, one of the brothers, and claim that the whole of the estate left by the said testator, now in the hands of said Johnston, vested in them absolutely and in fee simple, under the provisions of said will, and the issue, if any, of the brother who married and died in Ireland, the children of the said testator having all died childless and without issue. The complainants claim to be entitled to the estate, and pray an account.

The defendants demurred to the bill, and the presiding Judge in the Court below, sustained the demurrer and dismissed the bill, and to this judgment the complainants except, and assign error thereon.

A majority of this Court being of opinion, that the presiding Judge in the Court below committed error in sustaining the said demurrer, reverse his judgment. I think there was no error in the judgment of the Court below, and now proceed to assign my reasons for believing that it ought to be affirmed.

Robertson et al. vs. Johnston, trustee, et al.

The testator disposes of the principal part of his estate in the fourth and fifth clauses of his will. The fourth clause, in fact, contains a disposition of the whole of that part of the estate to which the parties litigant before us can lay claim. The testator was the draftsman of his own will, and he adopted his own plan of giving expression to his intentions. Like many persons who undertake the same thing, he no doubt thought, that because his purposes and objects were so well understood by himself, it was not necessary to be very particular in selecting language in which to express them, to convey his meaning to others. He perhaps did not know, that by far the largest part of the difficulties springing up in the construction of wills, grows out of a want of perspicuity in the language in which they are written. I think, however, that as awkwardly as the will under consideration is written, the intention of the testator may be collated from it, and, that effect may be given to that intention, consistently with the rules of law.

The testator, in the fourth part of his will, gives and bequeaths the whole of his estate, both real and personal, not disposed of in antecedent clauses. He, however, does not state to whom it is given. The objects must be looked for by examining the entire context. By doing this there can be no doubt. He gives no part of his estate in fee to his wife. When each of his children arrives at the age of twenty-one years, she (the daughter, for his children were all daughters,) is to receive a share of his estate. But still, the whole estate is not to be divided off. One-third of the estate is to be reserved for the use of his wife during her life. At her death, that third part is to revert to his children, or the survivors of them. The wife is to have the direction of the whole of the estate, until distributed agreeably to the above stated provisions. Thus far the wife and children are the sole objects of the testator's bounty; the wife's interest as expressed, is an estate for life, and the children's interest as far as declared, are estates in fee. If the entire fee is not given to the chil-

124 SUPREME COURT OF GEORGIA.

dren, it is not given at all, for the brothers named in the fifth, clause do not take, except on the conditions therein expressed, on which I shall remark presently. In the sixth clause o the will the testator first appoints his wife executrix, and then appoints four executors, to whom he commits the care of his family and the bringing up his children decently and honestly. The request in this clause is almost equivalent to the appointment of guardians of the persons, at least, of his children. But in the fourth clause of the will, at the time, and in connection with it, that the testator gives the direction of his whole estate to his wife, he appoints her the guardian of his children, and in case of her death during their minority, he appoints his surviving executors their guardians. After the request in the sixth clause, there was no necessity for this, if he did not consider that his estate passed to them under his will during their minority. The appointment of a guardian under these circumstances is evidence, of the testator's intention that the property should vest in the children immediately on his death, except the third part, reserved to the wife, contingently, on their surviving her. The property then, by necessary implication, was given by the testator to his children, to vest in them on his death, in the manner above stated, whether, at that time, they had attained majority or not. If the fee was not disposed of by the will, during their nonage, it must have vested in the wife and children, as the heirs at law of the testator, but it is clear that the testator did intend that the wife should not take more than an interest for life, in any part of his estate, and that the children should take the respective shares to which they were entitled absolutely, and the remainder after the death of the wife in the part reserved for her use, contingently, on their surviving her.

It cannot be questioned that, taking the fourth clause of the will by itself, if either of the daughters had married and died before attaining the age of twenty-one years, leaving a child surviving her, the husband, and if he were dead, the

Robertson et al. vs. Johnston, trustee, et al.

child, would have been entitled to her share of the estate.    A question might have arisen as to the right of the husband or child to that part of the estate given to the testator's widow during her life, if she had survived the daughter dying in her minority.    Instances of estates passing by implication much stranger than that under discussion, may be found in 2 *Peer Williams* 194, *Crowder vs. Clowes*, 2 *Vesey Jr.* 449, &c., &c.

By the fourth clause of the will, therefore, the testator gave the estate, real and personal, therein bequeathed and devised, to his children, except one-third part thereof, reserved to his wife during her life, which was given, on her demise, to such of his children as should survive her.    The testator's children were all daughters, they all attained the age of twenty-one years, and all survived the wife, and the whole estate, therefore, vested in them absolutely, unless there is something in a subsequent part of the will to prevent it.

It would, in my judgment, do violence to the intention of the testator, and the words of his will, to hold that the fifth clause of the will reduced the estate of the children to a mere usufructuary interest.    The testator knew that his children were all daughters, and that reaching a marriageable age before twenty-one, and they might marry and die, surviving both husband and child, if any, before the attainment of that age.    While he did not intend to injure their prospects of marriage, or cut off their children, if any, living at their death, they surviving their husband, he intended to give over to his brothers the entire estate, on condition that they all died surviving their mother, single and childless, before they attained the age of twenty-one years.    It is manifest, that if the children had all died, unmarried and childless, before they arrived at maturity, whatever meaning may be affixed to that term, the mother surviving them, the brothers could not have taken any thing under the will, nor could the surviving mother.    Nothing was given over in that event.    The will making no disposition of the property, it must have been

distributed under the Act for distributing intestates' estates, and the wife or widow would have taken one moiety of the estate, and the brothers and sisters of the testator would have taken the other moiety. The testator having died in 1803, the statute of distributions of 1789 would have governed the descent of the property. That the death of the wife is mentioned in connection with that of the children and is made one of the conditions on which the estate was to go over to the brothers, is strong evidence to my mind, that the testator did not intend to tie up his property in any event, if the children should attain the age of twenty-one years. This opinion, that the testator intended the unrestricted ownership of the property to be in the children, on their marriage respectively before twenty-one, and after that age, whether married or not, is strengthened by the fact that the testator gives over "*what remains*" of his estate on the happening of the contingency on which the brothers were to take. This is the only relation in which he uses that expression. In every other place he speaks of his estate. It is true that this expression would have but little influence, if a life estate only had been expressly given to the children, or if it appeared that the estate consisted of property of a perishable nature. The contrary, however, appears. The will gives the estate, real and personal, and it no where appears that the testator could have referred to a portion of the property likely to be lost or destroyed by the use.

If, on the death of the wife, after the daughters had attained the age of twenty-one years, they being single and childless, the brothers had filed a bill charging that they were entitled to the remainder on their death single or childless; that they were likely to die single or childless, and that they were exercising all the rights of absolute ownership over the property, selling and converting it and the proceeds to their own use, no Chancellor, I apprehend, would have interfered to restrain the daughters, and declare a trust for the brothers. This is putting the case as strongly for the plain-

tiffs in error as they could desire it.  The Chancellor would have replied, it seems to me, that, taking the will as a whole, his children were the first objects of the testator's bounty, that admitting that the complainants construed correctly the conditions on which they should be entitled to what the testator bequeathed or devised to them, it could never have been his intention to restrict his children in the use of the property, in a manner to interfere with their complete enjoyment of it, and that all to which the brothers could be entitled was what might remain of the estate after this unrestricted use and ownership of it by the children.  What might remain could not be ascertained.  It must necessarily have been a matter of doubt and uncertainty, and too much so to authorize a Court to risk the thwarting of the main intention of the testator, to uphold a subordinate and doubtful purpose, when there could be no certainty on the subject.  When there is great doubt and uncertainty in such matters the Court will not undertake to execute the will, and for that reason the limitation over to the brothers was void.  *Eade vs. Eade et al.*, 5 *Mad. Ch. Rep.*, 118; *Wilson vs. Major*, 11*th Ves. Jr.*, 205; *Sprange vs. Barnard et al.*, 2 *Burn's Ch. Rep.*, 585; *Wynn vs. Hawkins*, 1 *Br. Ch. R.*, 179.

I will now consider the fifth clause of the will in another aspect.  If the children had all died childless within the age of twenty-one years, but the survivor of them had married and left her husband surviving, then the brothers could not have taken in remainder.  The testator could never have intended that if one of his children had died single, leaving a child, that the estate should go over to his brothers, and yet, if the will is to be construed literally, such must have been the case.  The Court, I apprehend, would have hesitated long before it would have held that the brothers were preferred by the testator to his grand-child, if the husband of the daughter had died before her, leaving her single at her death.

There are general rules for construing wills.  I do not

think that special, circumstances should induce a departure from a sound, well established rule of construction. The rule requires that the intention of the testator shall have effect, if it be legal. The whole will may be looked to in order to arrive at the intention, and sentences may be transposed and words changed to give effect to such intention, when it is well ascertained. No one can be so sceptical as to doubt whether the testator did not intend, in this will, that the child of the daughter should take, in the case I have put, instead of his brothers, and yet it would be necessary to change the word " or" into " and" to enable it to do it. If "and" should be read for "or," in case of a child, the rule should be the same, in the event of the marriage and death of the daughter in the life time of her husband. In each case, the brothers would be excluded.

While Courts disavow the right to make a will for a testator, they take considerable liberty with a will as written to effectuate the intention of the testator. A will is sometimes written by a testator, who is without counsel, and often *in extremis*, and the Courts will not allow loose expressions, badly connected sentences, and incautious language, to defeat intentions and purposes, well ascertained by a consultation of the entire will. There are cases in which the intention of the testator cannot be ascertained, and then the will, a provision involved in doubt, cannot be executed. There are also cases in which the intention may be arrived at satisfactorily to the expounder, and yet it may be so defectively expressed that the Court could not execute the will according to the intention, without supplying words so liberally as to amount to the making of a will agreeably to the presumed intention. This the Court will not do. The case of *Spalding vs. Spalding, Cro. Car.* 185, is an early instance of a departure from the letter of a will to give effect to the intention of the testator. "John Spalding had issue three sons, John, Thomas and William. He devised land to John, his eldest son, and the heirs of his body, after the death of Alice,

the devisor's wife; and if John died, living Alice, that William shall be his heir." "John dies, having a son, in the life of Alice. Alice dies and William claims the land." According to the letter of the will he is clearly entitled, yet the Court examining the whole context of the will, determined the case according to the intent of the testator, and that intent was, that if John die *without issue,* living Alice, William should have it.

It is unnecessary to extend this examination, for the purpose of determining whether, if there had been a child, that child could have taken any thing under the will, there being no express gift to it, or whether the parent must not have taken an estate tail, under the English law, descendible to the child, and that under our law, the mother being the first taker, would not have taken an absolute fee simple in the property. According to the construction I place on the will, I have said much that I might have omitted. The estate vested in the testator's children at his death, in the manner I have hereinbefore stated, and the limitation over to the brothers, if good, could take effect only on the death of the wife and children, before the latter arrived at maturity, or in the event of the death of all, single and childless, before they attained the age of twenty-one years.